UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DeWITT SETTLES,

        Plaintiff,        Case No. 2:11-cv-8

v.        Honorable R. Allan Edgar

BRENDA THOMPSON et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, McDonald, Fiegel, Derusha, Ollis, Karr, and Hill. The Court will serve the complaint against Defendants Thompson, Clark, Cheatham, Scott, Maxon, Taskila, Miron, and Costello.

**Discussion**

I. Factual allegations

Plaintiff DeWitt Settles presently is incarcerated at the Alger Maximum Correctional Facility (LMF). He sues the following LMF employees: Nurses Brenda Thompson, Roberta Clark, and Charles D. Scott; Health Unit Manager Ruby Cheatham; Resident Unit Officers (RUOs) (unknown) McDonald, (unknown) Maxon, (unknown) Fiegel, Randy Ollis, (unknown) Derusha, (unknown) Karr, K. Hill, and L. Miron; Warden Catherine Bauman; Lieutenant K. Taskila; and Assistant Resident Unit Supervisor Keith Castello.

Plaintiff alleges that he suffers from recurring migraine headaches, for which he is prescribed Excedrin Migraine tablets on an as-needed basis. The gravamen of the complaint is that on March 30, April 1, April 4, April 25, April 30, May 9, May 22, and July 9, 2009, Plaintiff was required to wait hours before receiving medication for his headaches, in violation of his Eighth Amendment rights.

On March 30, 2009 at about 10:30 a.m., Plaintiff asked Defendant McDonald to call the nurse, as Plaintiff needed his headache medication. McDonald told Plaintiff that Defendant Clark was in the unit at that time and that he would tell her about Plaintiff's complaint. McDonald told Clark, who responded that she did not have the medication with her. At 12:45, when Plaintiff told McDonald that Clark had not brought his medication, McDonald agreed to call health services again. Shortly before the end of McDonald's shift, Plaintiff stopped him again, and McDonald reported that he had called and told the nurse to tell Clark that Plaintiff needed his medications. Clark did not bring the medications until 6:00 p.m. She told Plaintiff that she had forgotten his request and that she would not make special trips to the unit other than at routine medication times.

Plaintiff again had a headache on April 1, 2009. At about 10:30 a.m., he stopped Defendant Fiegel and asked him to tell the nurse that he needed his headache medication. Defendant Fiegel agreed to call. At 11:00, the normal time for nursing staff to distribute medication, Plaintiff stopped Defendant Ollis and asked him if the nurse was in the unit yet. Ollis responded, "No," so Plaintiff asked him to contact health services to let them know that he needed his medication. (Compl. ¶ 18, Page ID #4.) Ollis agreed. After another hour passed, Plaintiff asked Defendant Derusha, who was passing out lunch trays, if the nurse was in the unit yet. Derusha said that he had not seen nursing staff. Plaintiff told Derusha that he had asked Ollis to call and that he had been waiting more than an hour. Derusha suggested that he be patient. After Derusha finished passing out trays, he told Plaintiff that he would see what he could do about getting medical staff to the unit. At 12:45, as Defendant Ollis performed rounds, Plaintiff again asked about his medications. Ollis told Plaintiff that the nurse had already been on the unit, but that he would try to get her to come back. At about 1:30 p.m., health care supervisors Defendants Cheatham and Thompson made rounds in the unit. When they arrived at Plaintiff's cell, Plaintiff asked for his medication, complaining that Nurses Galloway and Clark had been denying his medication. Thompson indicated that she would have someone send his medications. Plaintiff still had not received his medication by 3:30 p.m, when Defendant Hill made his rounds. Plaintiff told his story, and Hill stated that he would call them himself. On the next round, Hill told Plaintiff that Defendant Clark told him that Plaintiff would have to wait until medication rounds. Plaintiff finally received his medication at 6:00 p.m. Clark told Plaintiff that he would only get his medications when she did rounds.

On April 4, 2009, Plaintiff awoke with a severe headache at 4:00 a.m. When Defendant Maxon conducted rounds, Plaintiff asked him to contact the nurse to tell her that Plaintiff

needed his headache medication. Maxon agreed, but a half-hour later, Maxon had not yet called. When Maxon conducted yet another round, Plaintiff asked again, and Maxon told Plaintiff that he would not make the call.

At 4:00 p.m. on April 25, 2009, Defendant Nurse Scott was making a healthcare round. Plaintiff asked Scott if he had Plaintiff's headache medication with him. Scott told him that he did not have it, but that he would let Nurse Galloway know that Plaintiff needed the medication. After waiting several hours, Plaintiff spoke to Defendant Officer Derusha, who agreed to give the nurse a call. When his medication did not arrive, Plaintiff Officer Comstock to call the nurse. At 12:45 a.m., Nurse Galloway finally brought Plaintiff his medication. She told him that no one from the second shift had informed her about his request.

On the night of April 30, 2009, Plaintiff became dizzy and light-headed and felt a headache coming on. Shortly thereafter, Plaintiff asked Defendant Karr to call the nurse because he needed his medication. Karr informed Plaintiff that a nurse was not available on the compound. Plaintiff asked to speak to the shift commander. At 11:30 p.m., Defendant Taskila came to Plaintiff's cell. Taskila advised Plaintiff that Defendant Clark had told him that all prisoners had received medications and that he was to call for health care only for emergencies. Taskila advised Plaintiff that a headache was not a medical emergency. Plaintiff alleges that Defendants Cheatham and Thompson, as medical supervisors, should have made a plan to treat patients requiring as-need prescriptions and should have realized that the lack of medical staff would cause some prisoner harm.

Plaintiff awoke with a headache at approximately 10:30 or 11:00 a.m. on May 9, 2009. Plaintiff saw Defendant Nurse Charles Scott walking past his cell, and he asked Scott if he

had Plaintiff's medications. Scott told Plaintiff that he did not have the medication with him and that he would come back with it. Plaintiff became increasingly dizzy and sick. At 1:15 p.m., Plaintiff asked Defendant McDonald to call health care. At approximately 1:45, McDonald told Plaintiff that he had tried to call before and could not get through, but he would try again before he went off duty. After the 2:00 to 10:00 p.m. shift came in, Plaintiff asked Officer Jennings to again call for the medication. Jennings immediately called Officer Roberts and asked him to call health services. Defendant Scott brought Plaintiff's medication at 3:40 p.m. Scott told Plaintiff that he did not bring it earlier because he forgot.

On May 22, 2009, Plaintiff awoke at 6:30 a.m. with a severe headache. At 7:30 a.m., Plaintiff heard Defendant Nurse Scott elsewhere in the unit. Plaintiff got Scott's attention and told him that he needed his medication. Scott told Plaintiff that he would tell LPN Sage, who had Plaintiff's medications. After an hour, Plaintiff stopped Defendant Castello during his rounds, asking if he would call the nurse and complaining about the delays in medical care. Castello told Plaintiff that he could do nothing about the delay, because it was not a custody issue. After another hour and a half, Plaintiff asked Defendant Miron, who was delivering lunches, to contact the nurse. Miron told Plaintiff that he would get his medication when health services personnel came into the unit. At 2:15 p.m., Plaintiff stopped RUO Vining to ask again about his medication. When Vining seemed unresponsive, Plaintiff began yelling that he had a terrible headache. Vining called the guard-bubble officer, asking that the nurse be called about Plaintiff's medication. Defendant Clark finally delivered his medication at 3:35 p.m. On May 24, 2011, while Defendant Scott was dispensing regular medications to Plaintiff, Plaintiff asked why Scott had not told Sage to bring

Plaintiff his medications the other day. Scott responded, "[Be]cause I figured you would do it!" (Compl. ¶ 108, Page ID#14.)

On July 9, 2009 at approximately 10:45 p.m., Plaintiff experienced a severe headache. He asked RUO Salmi to contact health services for his migraine medication. Salmi told Plaintiff that a nurse was not available. Plaintiff asked to see a supervisor, and he later spoke with Sergeant Chartrand. Chartrand told Plaintiff that there was nothing he could do because no health care providers were on duty. Plaintiff alleges that Defendants Thompson and Bauman knew or should have known that the failure to having nursing staff available would result in some prisoner's needs not being met.

For relief, Plaintiff seeks compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's alleges that Defendant RUOs McDonald, Fiegel, Derusha, Ollis, Karr, Hill and Miron violated the Eighth Amendment by failing to secure prompt treatment for his headaches. Under some circumstances, the failure to timely treat a prisoner's migraine headaches may rise to the level of an Eighth Amendment violation. *See Newsome v. Peterson*, 66 F. App'x 550, 551 (6th Cir. 2003). "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain . . . ." *Estelle*, 429 U.S. at 104 (internal quotation omitted). "This is true whether the indifference is manifested by prison doctors in their response to

the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Here, however, Plaintiff alleges only that, on various dates, he asked Defendants McDonald, Fiegel, Derusha, Ollis, Karr, and Hill to call health services and they agreed to do so. While Plaintiff may not have received a prompt response from health services personnel, he fails to allege that these Defendants failed to take any requested action or that they intentionally delayed or interfered with the treatment Plaintiff was prescribed. Such allegations therefore wholly fail to establish that Defendants McDonald, Fiegel, Derusha, Ollis, Karr, and Hill acted with the subjective intent proscribed by the Eighth Amendment.

Moreover, Plaintiff's only allegation against Warden Bauman is that Bauman failed to ensure that a health care employee was always on duty so that Plaintiff did not have to wait, in the event he developed a headache. Plaintiff's claim essentially is that Warden Bauman was negligent in setting staffing levels or failed adequately to supervise the work and staffing of the health services unit. Mere negligence is insufficient to implicate the Eighth Amendment. [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (internal quotations omitted). Plaintiff's allegation that Defendant Bauman failed adequately to schedule staff therefore does not support a finding that Bauman was deliberately indifferent to a substantial risk of serious medical need. Further, to the extent Plaintiff suggests that Defendant Bauman failed adequately to supervise medical staff, he fails to state an actionable claim under § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates

under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Bauman engaged in any active unconstitutional behavior. Accordingly, for both reasons, Plaintiff fails to state a claim against Defendant Bauman.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, McDonald, Fiegel, Derusha, Ollis, Karr, and Hill and will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Thompson, Clark, Cheatham, Scott, Maxon, Taskila, Miron, and Costello.

An Order consistent with this Opinion will be entered.


Dated:     3/8/2011            */s/ R. Allan Edgar*
                               R. Allan Edgar
                               United States District Judge